UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

Danny Goodman, Jr.                                    Case No. 6:15-bk-01852-CCJ
                                                      Chapter 7
      Debtor.

_____/

Danny Goodman, Jr.
                                                      Adv. Pro. No. 6:15-ap-00062-CCJ
      Plaintiff/Debtor,

v.

The State of California acting by and
through the State Board of Equalization,

      Defendant.

_____/

## DEBTOR DANNY GOODMAN, JR.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT II AND INCORPORATED MEMORANDUM OF LAW

**COMES NOW** Debtor and Plaintiff Danny Goodman, Jr. ("Goodman" or "Debtor"), by and through undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, as made applicable herein by Rule 7056 of the Federal Rules of Bankruptcy Procedure, and hereby files this Motion for Partial Summary Judgment on Count II and Incorporated Memorandum of Law (this "Motion"), and seeks entry of final summary judgment on Count II of his Complaint to Determine Dischargeability of Debts against Defendant the State of California, acting by and through its Board of Equalization (the "Board"), and in support thereof, respectfully shows as follows:

## PROCEDURAL BACKGROUND

1.      On March 4, 2015 (the "Petition Date"), Goodman filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code").

2.      This adversary proceeding was initiated when Goodman filed his Complaint to Determine Dischargeability of Debts related to certain tax obligations which are allegedly owed to the Board (the "Complaint") (Adv. Dkt. No. 1).

3.      The Complaint includes five Counts.  Count II, which is the subject of this Motion, is for the determination that the debts owed to the Board by Goodman are barred and therefore dischargeable pursuant to Cal. Rev. & T. Code § 6711.

## STATEMENT OF UNDISPUTED FACTS

4.      The Board has filed Proof of Claim No. 3-1 alleging total unpaid tax liabilities as of the Petition Date of $1,138,491.31 (the "Board Claim").  [Claim 3-1; Answer of Defendant (Adv. Dkt. No. 10) (the "Answer") at ¶ 7]

5.      The Board Claim expressly states that it is wholly unsecured. [Claim 3-1; Answer at ¶ 8]

6.      Although the Board has filed and recorded notices of tax liens in California, the Board, by filing a wholly unsecured claim, recognizes that Goodman had no property in California on the Petition Date to which any lien could attach.  [Claim 3-1; Answer at ¶ 8; Affidavit of Danny Goodman, Jr., dated August 31, 2015 (the "Aff."), at ¶ 4]  A copy of the Aff. is attached hereto as **Exhibit 1**.

7.      The Board Claim specifically lists its claim as non-priority, and the Board did not mark or identify the claim as a tax or penalty owed to governmental unties under 11 U.S.C.

§ 507(a)(8) and expressly failed to check the box on the form for that category.  [Claim 3-1; Answer at ¶ 9]

8.      The alleged obligations of Goodman which are the subject of this proceeding relate to transactions which occurred between April 1, 1990, and June 30, 1992, approximately **25 years ago**. [Answer at ¶ 10]

9.      The allegations concern a business called the "Galaxie Boat Center." [Answer at ¶ 12]

10.     The Galaxie Boat Center was located in California. [Answer at ¶ 12]

11.     The Board conducted an audit of "Galaxie Boat Center, Daniel J. Goodman, et al." for the period April 1, 1990, through June 30, 1992, with regards to whether all sales and use excise taxes were paid. [Answer at ¶ 14]

12.     Tax returns as required under California law were timely filed or given to the Board for the period April 1, 1990, through June 30, 1992. [Answer at ¶ 15]

13.     On October 6, 1993, the Board issued a Notice of Determination against Galaxie Boat Center, Daniel J. Goodman, Bret A. Potts, and Lori A. Potts, as partners in the Galaxie Boat Center partnership, for the period April 1, 1990, through June 30, 1992 (the "October 1993 Notice").  A copy of the October 1993 Notice is attached to the Complaint as **Exhibit A**. [Answer at ¶ 16]

14.     In the October 1993 Notice, the Board alleged that there was a liability due from the partnership, and, consequently, the individual partners, in the amount of $338,413.94 in unpaid tax, $84,603.50 in fraud penalties, and $89,479.08 in statutory interest, for a total amount due of $512,496.54.  [Answer at ¶ 17]

15.    Galaxie Boat Center, Goodman, and the Partners, filed a timely petition for redetermination to challenge the Board's determination of liability.  [Answer at ¶ 18]

16.    After a hearing on the petition for redetermination, the Board issued a Notice of Redetermination on March 15, 2000, with regard to the audit period April 1, 1990, through June 30, 1992 (the "First March 2000 Notice").  A copy of the First March 2000 Notice is attached to the Complaint as **Exhibit B**. [Answer at ¶ 19]

17.    The  First March 2000 Notice (i) eliminated the liability as to all parties for the second quarter of 1990; (ii) determined that the Partners ceased to be partners after January 1, 1991; (iii) determined that the Partners and Goodman were liable for taxes only for the period July 1, 1990, through December 31, 1990; (iv) granted relief from any fraud penalty for the period of July 1, 1990, through December 31, 1990; (v) determined that the partnership ceased to exist as of January 1, 1991; and (vi) eliminated all liability for the partnership "Galaxie Boat Center" for the period January 1, 1991, through June 30, 1992. [Answer at ¶ 20]

18.    Pursuant to the First March 2000 Notice, Goodman allegedly owed the sum of $55,061.67 in tax and $59,850.05 in interest, for the period April 1, 1990, through June 30, 1992. [Answer at ¶ 21]

19.    Although the Board found that the Galaxie Boat Center partnership ceased to exist as of January 1, 1991, the Board in March of 2000 determined that Goodman continued to operate the business no longer as the Galaxie Boat Center partnership, but as a different operation, for the period January 1, 1991 through June 30, 1992.  [Answer at ¶ 22]

20.    As a result, on March 14, 2000, the Board issued a separate Notice of Determination to Daniel J. Goodman (the "Second March 2000 Notice").  A copy of the Second March 2000 Notice is attached to the Complaint as **Exhibit C**.  [Answer at ¶ 23]

21.      Pursuant to the Second March 2000 Notice, Goodman allegedly owed the sum of $239,458.81 in tax, $59,864.70 in penalties, and $224,985.42 in statutory interest, for a total amount due of $524,308.93, for the period January 1, 1991, through June 30, 1992.  [Answer at ¶ 24]

22.      The Second March 2000 Notice was the first determination of liability made by the Board against Goodman in his personal capacity and not as a partner of the Galaxie Boat Center partnership.  [Answer at ¶ 25]

23.      The liabilities asserted by the Board pursuant to the Second March 2000 Notice became due, payable, and delinquent thirty days after the issuance, or April 14, 2000.  [Answer at ¶ 26]

24.      Goodman filed a timely petition for redetermination to challenge the Board's Second March 2000 Notice.  [Answer at ¶ 27]

25.      Following a March 4, 2003, hearing before the Board on Goodman's petition for redetermination, the Board rejected Goodman's arguments and issued a Notice of Redetermination on March 19, 2003 (the "March 2003 Notice").  A copy of the March 2003 Notice is attached to the Complaint as **Exhibit D**.  [Answer at ¶ 28]

26.      Pursuant to the March 2003 Notice, Goodman owed the sum of $239,458.81 in tax, $59,864.70 in penalties, and $301,612.26 in statutory interest, for a total amount due of $600,935.77, for the period January 1, 1991, through June 30, 1992.  [Answer at ¶ 29]

27.      The liabilities asserted by the Board pursuant to the March 2003 Notice became due, payable, and delinquent thirty days after issuance, or April 18, 2003.  [Answer at ¶ 30]

28.      In 2003, the Board filed a Notice of State Tax Lien with the Los Angeles County Recorder and with the California Secretary of State with respect to the liabilities described in the

Second March 2000 Notice and then a second Notice of State Tax Lien with respect to the liabilities alleged in the March 2003 Notice.  [Answer at ¶ 31]

29.      In 2013, the Board re-filed a Notice of State Tax Lien with the Los Angeles County Recorder and with the California Secretary of State purporting to extend the tax lien associated with respect to the liabilities alleged in the Second March 2000 Notice and the March 2003 Notice. [Answer at ¶ 32]

30.      As confirmed by the Board Claim, Goodman has no real or personal property in the State of California to which any state tax lien attaches and had no such real or personal property on the Petition Date.  Goodman and his family left California in 2004 and have since moved to Central Florida.  [Answer at ¶ 8; Aff. at ¶ 4]

31.      The October 1993 Notice, the First March 2000 Notice, the Second March 2000 Notice, and the March 2003 Notice (collectively, the "Notices") are not judgments.  [Answer at ¶ 34]

32.      On April 26, 2013, the Board finally filed a lawsuit against Goodman before the Superior Court of the State of California, Case No. 34-2013-001-43997 (the "Lawsuit").  [Answer at ¶ 35]

33.      The Lawsuit seeks to reduce to a money judgment the amounts allegedly owed pursuant to the Second March 2000 Notice and the March 2003 Notice.  [Answer at ¶ 36]

34.      Goodman is no longer in the boat sales business, but works two jobs as a full time property manager and part time event disc jockey.  While Goodman initially hired counsel in California to defend him in the Lawsuit, Goodman soon learned that he could not afford to litigate the Lawsuit in California and also afford his other bills and debts.  [Aff. at ¶ 5]

35.    With the obligations of the Lawsuit, obligations on underwater real property, and other mounting debts, Goodman had no choice but to file for personal bankruptcy. He filed the Complaint to declare and determine that the alleged obligations to the Board are dischargeable in this bankruptcy. [Aff. at ¶ 6]

## MEMORANDUM OF LAW

### A.    Summary Judgment Standard

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "It is axiomatic that a bankruptcy court deciding a summary judgment motion, just like a district court, must determine whether there are any genuine issues of material fact." *Gray v. Manklow (In re Optical Technologies, Inc.*), 246 F.3d 1332, 1334 (11th Cir. 2001); *see also D'Angelo v. Conagra Foods, Inc.*, 422 F.3d 1220, 1225 (11th Cir. 2005) ("Summary judgment is properly granted when there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." (internal quotations and citations omitted)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Burger King Corp. v. E-Z Eating, 41 Corp.*, 572 F.3d 1306, 1313 (11th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). "If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to show the existence of a genuine issue of fact." *Id.*; *see also Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir. 1994) ("The party seeking summary judgment bears the initial burden of identifying for the district court those

portions of the record which it believes demonstrate the absence of a genuine issue of material fact. . . . Once the moving party has carried its burden, the non-moving party must show the existence of a genuine issue of material fact to avoid summary judgment." (internal alterations and citations omitted)).

**B.      *In Personam* Actions to Collect Unpaid Taxes Have a Three Year Statute of Limitations**

Although the Board is granted many powers by California law to facilitate collection of unpaid taxes, its reach is not infinite.  In fact, its ability to seek a money judgment against an alleged debtor is limited to only three years from the time the unpaid taxes become due and payable.  Cal. Rev. & T. Code § 6711.  Section 6711 of the California Revenue and Tax Code specifically provides as follows:

> At any time within three years after any tax or any amount of tax required to be collected becomes due and payable and at any time within three years after the delinquency of any tax or any amount of tax required to be collected, or within the period during which a lien is in force as the result of the recording of an abstract under Section 6738 or the recording or filing of a notice of state tax lien under Section 7171 of the Government Code, the board may bring an action in the courts of this state, of any other state, or of the United States in the name of the people of the State of California to collect the amount delinquent together with penalties and interest.

Section 6711 provides for two separate statutes of limitations, albeit somewhat inartfully. This statutory language was fully parsed by the Second District Court of Appeals in *People v. Garg*, 20 Cal. Rptr. 2d 80, 16 Cal. App. 4th 357 (Ct. App. 1993), where the court held that § 6711 provides a firm three-year statute of limitations for actions *in personam* and a separate, indefinitely extendable ten-year statute of limitations for actions *in rem*.

In *Garg*, a resident of Ohio, Anand G. Garg, purchased an aircraft from a California vendor on December 31, 1980, and wrongfully certified to the seller that the transaction was not subject to the sales and use tax.  *Id.* at 359.  On May 13, 1982, the Board issued a Notice of Determination

to Mr. Garg claiming both upaid taxes together with penalties and interest.  *Id.*  On June 12, 1982, thirty days after issuing its Notice of Determination, the taxes, interest, and penalties became "due and payable" and the Board issued a demand to Mr. Garg for immediate payment.  *Id.*

On February 1, 1989, the Board recorded a notice of state tax lien against Mr. Garg as well. *Id.*  Then, on June 19, 1990, well over three years after the taxes became due and payable in 1982, the Board brought a lawsuit against Mr. Garg seeking a money judgment against him for the unpaid taxes.  *Id.*

Mr. Garg defended the action, raising the defense of the statute of limitations in § 6711. *Id.*  The trial court entered judgment in Mr. Garg's favor based upon the "reasonable and equitable construction" of § 6711 which required that the court find the action brought by the Board was untimely and barred by the statute of limitations.  *Id.*

The Board appealed.  *Id.*  The Board's argument on appeal was that § 6711 should be read to provide for a timely *in personam* action "as long as there exists a recorded lien."  *Id.* at 363. The Board's argument was that the statute of limitations for bringing an *in personam* action should be essentially limitless, since a recorded lien lasts for ten years and can be re-recorded indefinitely. *Id.*

The Court of Appeal disagreed and affirmed the judgment, beginning its analysis with a careful look at § 6711.  *Id.* at 360.  The court found that § 6711 "refers, in the disjunctive, to two different limitation periods."  *Id.*   The court specifically held that § 6711 "grants the Board authority to 'bring an action,' implicitly differentiating between and providing distinct limitation periods  for actions against the person and actions upon liens."  *Id.* at 361-62.  The court found that "[i]t does not require any distortion of reason or language to construe the statute in this manner." *Id.* at 362.

The court also found the Board's interpretation of § 6711 to be unreasonable. *Id.* at 363. The court stated that the Board's interpretation would result "in a statute of limitations without limitations" and that "[b]ecause a lien can be renewed indefinitely, the time to bring an action could possibly be never ending" which was simply not "a reasonable reading of the statute." *Id.*

In addition, the court found that the Board's interpretation of § 6711 was inconsistent with the intent of the California legislature. *Id.* Looking back to the 1969 legislation, Assembly Bill No. 1838, the court noted that there was no discussion of such a "radical" concept as an indefinite statute of limitations, and that the law prior to 1969 was clear that three years was the firm statute of limitations for actions *in personam. Id.* The court also pointed to *People v. Smejkal*, 266 Cal. App. 2d Supp. 971, 973 (Ct. App. 1968) as a pre-1969 case clearly holding that the three year limitations period was clear and firm. *Garg*, 16 Cal. App. 4th at 362. The court reasoned that the Board's interpretation of § 6711, which would be a "radical change" from established law and practice, was nowhere even hinted in the legislative history and implied that the court would not depart from established jurisprudence without clear instruction from the legislature. *Id.*

The court also rejected the Board's reliance on two cases, namely *State Bd. of Equalization v. Balboa Ins. Co.*, 89 Cal. App. 3d 499, 502 (Ct. App. 1978) and *People v. United States Fire Ins. Co.*, 61 Cal. App.3d 231, 234-235 (Ct. App. 1976). The court distinguished both cases stating that in each case the Board was allowed to bring an action outside the three years only because the Board was merely seeking to enforce its *in rem* rights against collateral which had become subject to a valid state tax lien. *Garg*, 16 Cal. App. 4th at fn. 4. The court explained that these decisions "afford[ed] no guidance" because they were, in actuality, *in rem* actions to enforce liens, not *in personam* actions for a money judgment. *Id.* at 362.

In affirming judgment for Mr. Garg, the court mentioned that the Board could likely bring whatever action it wanted to enforce a lien on any property of Mr. Garg in California (if any such property existed for the lien to attach to), but the court made clear that "a personal action against [Mr. Garg] was barred" because it was well over three years after the Notice of Determination was issued. *Id.*  The *Garg* ruling therefore stands for the proposition that, while an *in rem* action to enforce a lien can potentially be brought indefinitely, an *in personam* action must be brought by the Board within three years of the unpaid taxes becoming "due and payable," or thirty days after the Notice of Determination is issued.

The Second District Court of Appeal had the opportunity to revisit its decision in *Garg* when the same litigants came before it again in *Garg v. People ex rel. State Bd. of Equalization*, 53 Cal. App. 4th 199 (Ct. App. 1997) ("*Garg II*").  After receiving a judgment in his favor against the Board, Mr. Garg proceeded to seek his litigation costs from the Board.  *Id.* at 204.  In granting Mr. Garg's request, and in denying the Board's request to set the litigation costs off against the unpaid taxes, the court also reiterated that the Board's interpretation of § 6711 was not "reasonable."  *Id.*  The Court further stated as follows:

> In *Garg I,* we concluded that, contrary to the Board's claim, section 6711's grant of authority to "bring an action" impliedly differentiated between actions against persons and actions upon liens, and provided a distinct limitations period for each kind of action.  (16 Cal. App. 4th at pp. 361-362.)  We rejected as "not a reasonable reading" the Board's claim that section 6711 allows a personal action against a delinquent taxpayer as long as there exists a recorded lien, because a tax lien is indefinitely renewable; consequently, the Board's interpretation would result in a statute of limitations without limitation.

*Garg II*, 53 Cal. App. 4th at fn. 2.

*Garg* is the therefore the law of California and is recognized by California secondary sources as established precedent.  *See, e.g.,* 56 Cal. Jur. 3d Sales and Use Taxes § 79, *Suit for*

*Taxes - Time for Bringing Suit* ("Although the state might have been able to bring an action to enforce the lien, if it could have been established that there existed a viable, valid lien directed at specific property in the state, a personal action against defendants was barred.").  In fact, even the Board's own website acknowledges the three year limitations period in *Garg*, stating as follows:

> **Statue [sic] of Limitations.**—The State can bring an *in personam* action within three years after the tax becomes due and payable, but no later. *People* v. *Garg* (1993) 16 Cal.App.4th 357.

*Laws, Regulations, and Annotations*, Sales and Use Tax Law, Chapter 6, http://www.boe.ca.gov/lawguides/business/current/btlg/vol1/sutl/sales-and-use-tax-law-chapter6-all.html, Notes to § 6711 (last visited August 30, 2015).

### C.    The Time for the Board to Seek *In Personam* Relief Against the Debtor Danny Goodman, Jr., Has Passed, and the Board Is Barred from Continuing the Lawsuit

As agreed by the parties, the liabilities of Debtor under the Second March 2000 Notice became due, payable, and delinquent on April 14, 2000 [Answer at ¶ 26].  As further agreed by the parties, the liabilities of Debtor under the March 2003 Notice became due, payable, and delinquent on April 18, 2003 [Answer at ¶ 30].  The Board also admitted that it only brought the Lawsuit against the Debtor for an *in personam* judgment on April 26, 2013, over **thirteen years** after the liabilities under the Second March 2000 Notice became due and payable and over **ten years** after the liabilities under the March 2003 Notice became due and payable [Answer at ¶ 35].

There are no disputed issues of fact relevant to the relief sought in this Motion.  In its Answer, the Board admitted all of Debtor's allegations regarding timing.  The ruling of *Garg* therefore undeniably bars any further action by the Board against Debtor for any *in personam* relief.  If the Board is entitled to any relief, that relief would be *in rem* only.  Debtor does not dispute that the Board has an effective and enforceable lien on any prepetition property of the Debtor in California.

As the Board has admitted in Claim 3-1, however, the Board Claim against Debtor is wholly unsecured [Claim 3-1; Answer at ¶ 8]. Debtor has confirmed by affidavit that he had and has no property in California on or after the Petition Date [Aff. at ¶ 4]. Therefore, any *in rem* collection action by the Board is also subject to discharge for any post-petition property Debtor may acquire in California. *See In re Olson*, 154 B.R. 276, 282 (Bankr. D.N.D. 1993) (holding that tax lien which secured dischargeable debt would survive bankruptcy only with respect to pre-petition property, but would not attach to post-petition property). To the extent the Debtor unknowingly had property in California prepetition, the Board is welcome to bring an action to recover that property. Other than that limited scope of possible relief, the Board is barred from bringing or continuing any further action against the Debtor.

WHEREFORE, Goodman respectfully requests that this Court enter a judgment determining that the Board Claim and all related obligations and liabilities are time-barred pursuant to Cal. Rev. & T. Code § 6711 and that such debts will be fully and finally discharged upon the entry of a discharge pursuant to 11 U.S.C. § 524 in this bankruptcy, that the tax liens filed by the Board are void and of no effect on any post-petition property of Goodman, together with such other relief as this Court deems proper.

Dated September 1, 2015.

/s/ Denise D. Dell-Powell
Denise D. Dell-Powell, Esq.
Florida Bar No. 0890472
Email:  ddpowell@burr.com
**BURR & FORMAN LLP**
200 S. Orange Avenue, Suite 800
Orlando, FL 32801
Telephone:  (407) 540-6600
Facsimile:  (407) 540-6601

and

*/s/ Michael A. Nardella*
Michael A. Nardella, Esquire
Florida Bar No. 51265
E-mail: mnardella@nardellalaw.com
**NARDELLA & NARDELLA, PLLC**
250 E. Colonial Dr., Suite 102
Orlando, Florida  32801
Telephone:  (407) 966-2680
Facsimile: (407) 966-2681

**ATTORNEYS FOR DEBTOR**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was furnished via electronic mail using the Court's CM/ECF system on the 1st day of September, 2015 to all parties receiving CM/ECF service including the State of California, Board of Equalization, c/o Dana Flanagan-McBeth, Esq., 450 N Street, MIC 82, Sacramento, CA 95829.


*/s/ Michael A. Nardella*
Michael A. Nardella, Esq.

Exhibit 1

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

Danny Goodman, Jr.                                      Case No. 6:15-bk-01852-CCJ
                                                        Chapter 7
      Debtor.

_____/

Danny Goodman, Jr.

      Plaintiff/Debtor,                        Adv. Pro. No. 6:15-ap-00062-CCJ

v.

The State of California acting by and
through the State Board of Equalization,

      Defendant.

_____/

**AFFIDAVIT OF DEBTOR DANNY GOODMAN, JR. IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT II**

STATE OF FLORIDA
COUNTY OF Seminole

      BEFORE ME, the undersigned authority, this day personally appeared Danny Goodman,

Jr., who, after being duly sworn, deposes and says as follows:

      1.    I am an individual and the Debtor in the above-captioned bankruptcy case.  I am

over the age of eighteen (18) years of age.

      2.    I have personal knowledge of the events and facts mentioned herein.

      3.    I make this affidavit in support of the Motion for Partial Summary Judgment on

Count II (the "Motion") filed by me against the Defendant.  I certify that all of the documents

attached to the Motion as an exhibit are true and accurate copies of the original documents.

15

4.    On the Petition Date (as that term is defined in the Motion) I owned no property, real or personal, located in the State of California. I currently own no property, real or personal, located in the State of California. I moved away from California with my family in 2004.

5.    I am no longer in the boat sales business. I work two jobs as a full time property manager and part time event disc jockey. I initially hired counsel in California to defend me in the Lawsuit (as defined in the Motion), but I soon learned that I could not afford to litigate the Lawsuit in California and also afford my other bills and debts.

6.    With the obligations of the Lawsuit, obligations on real property, and other debts, I had no choice but to file for personal bankruptcy. I filed the Complaint (as defined in the Motion) to declare and determine that the alleged obligations to the Board are barred and dischargeable in this bankruptcy.

7.    This Affidavit is signed under penalty of perjury as being true and correct based on personal knowledge.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Danny Goodman, Jr.

STATE OF FLORIDA

COUNTY OF Seminole

This Affidavit in Support of Motion for Partial Summary Judgment on Count II was sworn to and subscribed before me this 31st day of August, 2015, by Danny Goodman, Jr., who ( ) presented _____ as identification and/or (X) is personally known to me.

NOTARY PUBLIC, STATE OF FLORIDA

_____

JACQUELINE BAKER
MY COMMISSION # FF 109735
EXPIRES: April 22, 2018
Bonded Thru Budget Notary Services

16